UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



APR - 6 2006

CLERK'S OFFICE
DETROIT

DARRYL ESTELLE,

Petitioner,

                                 CASE NO. 05-CV-72458-DT

v.                             JUDGE GERALD E. ROSEN

                                 MAGISTRATE JUDGE PAUL J. KOMIVES

RAYMOND BOOKER,

Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION ................................................................. 2
II.    REPORT ........................................................................... 2
     A.    *Procedural History* ........................................................ 2
     B.    *Factual Background Underlying Petitioner's Conviction* ...................... 5
     C.    *Standard of Review* ....................................................... 6
     D.    *Fourth Amendment Claim (Claim I)* ......................................... 8
     D.    *Evidentiary Claims (Claims II, V, VI, and VII)* ............................ 9
          1.    *Clearly Established Law* .............................................. 10
          2.    *Analysis* ........................................................... 11
              a. Other Acts Evidence (Claim II) ................................... 11
              b. Cross Examination of Petitioner's Wife and Rebuttal Testimony (Claims V & VI)
                                                                                    12
              c. Opinion Testimony (Claim VII) ................................... 14
     F.    *Prosecutorial Misconduct Claims (Claim III)* ............................... 15
          1.    *Clearly Established Law* .............................................. 16
          2.    *Analysis* ........................................................... 16
               a. Labeling Petitioner a Drug Dealer ............................... 16
              b. Commenting on Petitioner's Motion to Suppress ................... 17
              c. Sarcastic Responses During Cross-Examination ................... 18
              d. Asking Petitioner to Comment on Credibility of a Witness ....... 18
              e. Attacking Defense Counsel's Argument ........................... 20
     G.    *Time Limit on Closing Argument (Claim IV)* ................................ 21
     H.    *Sentencing Claims (Claims VIII and IX)* ................................... 23
          1.    *Retroactive Change in Sentencing Laws (Claim VIII)* .................... 23
          2.    *Proportionality (Claim IX)* .......................................... 24
              a. Clearly Established Law .......................................... 24
              b. Analysis ......................................................... 27
     I.    *Resolution of Petitioner's Postconviction Motion (Claim X)* ............... 28
     J.    *Conclusion* ............................................................... 29
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ...................................... 29

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.     *Procedural History*

1.     Petitioner Darryl Estelle is a state prisoner, currently confined at the Ryan Correctional Facility in Detroit, Michigan.

2.     On May 14, 1999, petitioner was convicted of possession with intent to deliver 650 grams or more of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(i), following a jury trial in the Wayne County Circuit Court.[1]   On June 10, 1999, he was sentenced to a term of 25-40 years' imprisonment.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     WHERE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT DID NOT CONTAIN PROBABLE CAUSE THAT EVIDENCE WAS LOCATED IN THE PLACE TO BE SEARCHED, AND FAILED TO DESCRIBE WITH PARTICULARITY THE PLACE TO BE SEARCHED AND EVIDENCE WAS SEIZED, THE SEARCH WAS UNLAWFUL AS A MATTER OF BOTH STATE AND FEDERAL LAW AND CONSTITUTIONAL PRINCIPLE, AND THE EVIDENCE SEIZED MUST BE SUPPRESSED.

II.    DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL WHERE THE TRIAL COURT ADMITTED, OVER OBJECTION, OTHER ACTS EVIDENCE OF ALLEGED NARCOTICS PARAPHERNALIA SEIZED FROM MR. ESTELLE'S MOTHER'S HOUSE FOR WHICH, CONTRARY TO MRE 404(B), THERE WAS NO NOTICE GIVEN, THERE WAS A LACK OF FOUNDATIONAL NEXUS, NO LOGICAL RELEVANCE, AND IT WAS MORE PREJUDICIAL

---

[1]Petitioner was acquitted on a separate charge of possession with intent to deliver less than 50 grams of heroin.

THAN PROBATIVE.

III.   THE PROSECUTOR VIOLATED MR. ESTELLE'S STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS RIGHTS TO A FAIR TRIAL BY ENGAGING IN REPEATED INSTANCES OF MISCONDUCT.

IV.   IMPOSING A THIRTY-MINUTE TIME LIMIT ON CLOSING ARGUMENTS IN A CAPITAL CASE THAT LASTED FIVE DAYS DEPRIVED MR. ESTELLE OF HIS DUE PROCESS RIGHTS TO A FULLY AND PROPERLY INFORMED JURY AND A FAIR TRIAL.

V.   THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED THE PROSECUTOR TO CROSS-EXAMINE DEFENDANT'S WIFE ABOUT A STATEMENT THAT SHE ALLEGEDLY MADE ABOUT A COLLATERAL ISSUE THAT HAD NOT BEEN DISCLOSED IN DISCOVERY AND THE PROSECUTOR THEN USED, OVER OBJECTION, TO IMPEACH DEFENDANT'S WIFE WITH EXTRINSIC EVIDENCE ON A COLLATERAL MATTER.

VI.   REBUTTAL TESTIMONY WAS REVERSIBLE ERROR AND DENIED DEFENDANT HIS DUE PROCESS RIGHT TO A FAIR TRIAL WHERE REBUTTAL WAS ON A COLLATERAL MATTER AND THE PROSECUTION IMPROPERLY ELICITED A DENIAL ON CROSS-EXAMINATION IN ORDER TO LATER PRESENT EVIDENCE THAT SHOULD HAVE BEEN BROUGHT OUT IN ITS CASE IN CHIEF.

VII.   IMPROPER UNSOLICITED OPINION TESTIMONY DEPRIVED MR. ESTELLE OF HIS CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Estelle*, No. 222046 (Mich. Ct. App. Jan. 25, 2002) (per curiam) [hereinafter "Ct. App. op."].

4.   Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Estelle*, 467 Mich. 882, 672 N.W.2d 857 (2002).

5.   In May 2003, petitioner filed a motion for relief from judgment in the trial court

3

pursuant to MICH. CT. R. 6.500-.508, claiming that he was entitled to resentencing based on a retroactive change in the law. The trial court denied the motion on September 23, 2003. *See People v. Estelle*, No. 98-7808-01 (Mich. 3d Jud. Cir. Ct. Sept. 23, 2003). Petitioner thereafter filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

I.      DEFENDANT WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS, IN VIOLATION OF THE UNITED STATES CONSTITUTION XIV AM. AND MICH. CONST. 1963, ART. 1, SECS. 16 & 17.

II.     DEFENDANT'S SENTENCE OF 25-TO-40 YEARS FOR THE OFFENSE OF POSSESSION OF 650 GRAMS OR MORE OF COCAINE IS CRUEL OR UNUSUAL PUNISHMENT THAT VIOLATES ART. 1, SEC. 16 MICH. CONST.

III.    DEFENDANT MEETS THE REQUIREMENTS OF MCR 6.508(D).

The Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order, "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Estelle*, No. 254986 (Mich. Ct. App. Jan. 3, 2005). Petitioner sought leave to appeal in the Michigan Supreme Court, which likewise denied petitioner's application in a standard order based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Estelle*, 472 Mich. 920, 696 N.W.2d 714 (2005).

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on June 21, 2005. As grounds for the writ of habeas corpus, he raises the ten claims that he raised in the Michigan appellate courts.[2]

---

[2]In support of his habeas application, petitioner attaches his state court briefs. For ease of reference, the claims denominated as I, II, and III in petitioner's appeal from the denial of his motion for relief from judgment will be numbered as claims VIII, IX, and X in this Report.

7.     Respondent filed his answer on December 22, 2005. He contends that petitioner's

claims are either not cognizable, without merit, or barred by petitioner's procedural default in the

state courts.

B.     *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was succinctly summarized by the

Michigan Court of Appeals:

> Defendant was pulled over for a traffic violation. Police officers retrieved
> defendant's licence and registration. One of the officers, Darrin Grandison, knew
> defendant through an informal motorcycle club. Upon determining that there were
> no outstanding warrants for defendant, the police officers decided to give defendant
> a verbal warning. When the officers were returning to defendant's vehicle, he pulled
> away from the stop and fled. Joseph Deeby saw defendant pass by with police in
> pursuit. Defendant threw a satchel from his vehicle. Deeby retrieved the satchel and
> gave it to police. The name Alyssa Estelle was written on the satchel. Six plastic
> baggies were found in the satchel. Each baggie contained approximately 125 grams
> of cocaine. Defendant was arrested and placed in the patrol vehicle. After defendant
> was removed from the vehicle, forty-eight packets of pink paper were discovered.
> The contents of the pink packets was heroin.

Ct. App. op., at 1. In addition to the evidence summarized by the Michigan Court of Appeals, the

prosecutor also presented evidence that a search was conducted at the home of petitioner's mother,

where petitioner lived. The search yielded a box of baking soda, sandwich bags, a Pyrex cooking

pan, a hot plate, a metal tin, and a metric scale.

Petitioner also presented a number of witnesses in his defense. Allen Black, petitioner's

nephew who also lived at the home of petitioner's mother, testified that the items seized by the

police belonged to his uncle, DeAndre, who was involved in drugs. Petitioner's wife testified that

petitioner was not a drug dealer, and denied that she had told the police that he was involved in drug

trafficking. Petitioner himself testified that the drugs were in a package that he had agreed to deliver

for a friend, and that he did not know what was in the package. While the police were checking his

5

license and registration, he looked in his daughter's school bag, where he had placed the package, and was surprised to find that the package looked to contain something illegal. He panicked, fled the scene of the stop, and threw the bag out the car window. He also denied that the items seized from his mother's house belonged to him. Three character witnesses testified that petitioner was law abiding and had a reputation for being truthful and honest.

In rebuttal, the prosecutor recalled Michigan State Police Trooper Darrin Grandison, who testified that during a search of petitioner's home, defendant's wife told him that she knew that petitioner had been dealing drugs.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also, Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also, Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

7

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also, Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.   *Fourth Amendment Claim (Claim I)*

Petitioner first contends that the introduction of the evidence seized from his mother's house violated the Fourth Amendment. The Court should conclude that this claim is not cognizable on habeas review, and thus that petitioner is not entitled to habeas relief on this claim.

Because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam). Thus, petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts. "For such an opportunity to have

8

existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994). The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985). Michigan provides such a mechanism to raise and litigate Fourth Amendment claims, and there is no evidence that this mechanism was not available to petitioner in the state courts; on the contrary he fully litigated this claim in both the trial and appellate courts. *See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).

In reaching this conclusion, it is irrelevant whether the state courts came to the correct conclusion on petitioner's Fourth Amendment claim. The courts that have considered the matter "have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar." *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986); *see also, Willett*, 37 F.3d at 1270 (citing cases). An argument directed solely at the correctness of the state court decision "goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

D.  *Evidentiary Claims (Claims II, V, VI, and VII)*

Petitioner next raises several claims challenging the admission of various testimony and

9

evidence at trial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.   *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also, Coleman v.*

*Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

    2.    *Analysis*

### *a. Other Acts Evidence (Claim II)*

Petitioner first contends that he was denied a fair trial by the improper admission of other acts evidence. Specifically, he contends that he was denied a fair trial by the introduction of the items seized from his mother's house because he was not provided notice of the prosecutor's intent to introduce this evidence as required by Rule 404(b), and because the evidence was irrelevant (or its probative value was outweighed by its prejudicial effect). The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).

Further, petitioner cannot even show that the admission of this evidence was improper under state law. Although "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith[,] [i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act[.]" MICH. R. EVID. 404(b)(1). As the court of appeals explained, the drug paraphernalia "led to the inference that [petitioner] sold or intended to sell the drugs he possessed," which was an element of the offense. Ct. App. op., at 2. The evidence was thus admissible under Rule 404(b) to show petitioner's intent. *See United States v. Bailey*, 133 Fed. Appx. 534, 538 (10th Cir. 2005).

Petitioner also contends that he was denied a fair trial because he did not receive notice of the prosecutor's intent to use this evidence as required by Rule 404(b). This claim likewise raises solely an issue of state law. *See Richardson v. Evans*, 99 F. 3d 1150, 1996 WL 603278, * 3 (10th Cir. October 22, 1996); *Doss v. Bock*, No. 00-10030, 2002 WL 1554363, * 13 (E.D. Mich. July 15, 2002) (Lawson, J.) (prosecutor's alleged failure to give prior notice of intent to introduce evidence of defendant's and other witnesses' wrongful acts did not rise to level of a due process violation). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

*b. Cross Examination of Petitioner's Wife and Rebuttal Testimony (Claims V & VI)*

Petitioner next contends that he was denied a fair trial when the trial court permitted the prosecutor to cross-examine his wife on a collateral matter, and then permitted rebuttal testimony to contradict her testimony. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

During direct examination, petitioner's wife testified that petitioner was not a drug dealer.

12

*See* Jury Trial Tr., dated 5/13/99, at 39. During cross-examination, the prosecutor asked Mrs. Estelle, "[Y]ou told [Trooper Grandison] that your husband had been dealing narcotics for ten years, didn't you?" *Id.* at 57. Mrs. Estelle denied that she had told this to Grandison. *See id.* As to the cross-examination, petitioner cannot show that he was denied a fair trial. As the court of appeals explained, petitioner "opened the door" to this question "by eliciting on direct examination that [he] was not a drug dealer." Ct. App. op., at 3. Further, contrary to petitioner's argument, the evidence was not collateral, but went to the central issue in the case: whether petitioner was a drug dealer or merely, as he claimed, an unwitting courier. Thus, he cannot show that he was denied a fair trial by the prosecutor's cross-examination of his wife.

Nor can petitioner show that he was denied a fair trial when the prosecutor was permitted to call Trooper Grandison in rebuttal to testify as to the statement of petitioner's wife. The prosecution's presentation of Grandison's rebuttal testimony presents an issue of state evidentiary law subject to the above standards. *See Henderson v. Norris*, 118 F.3d 1283, 1286 (8th Cir. 1997); *White v. Withrow*, No. 00-74231, 2001 WL 902624, at *7 (E.D. Mich. June 22, 2001) (Rosen, J.); *Pickens v. Lockhart*, 802 F. Supp. 208, 217 (E.D. Ark. 1992). Furthermore, "[a] trial court possesses particularly broad discretion to determine permissible areas of inquiry on rebuttal." *Castro v. Sullivan*, 662 F. Supp. 745, 748 (S.D.N.Y. 1987); *see also, United States v. Askanazi*, 14 Fed. Appx. 538, 540 (6th Cir. 2001); *White*, 2001 WL 902624, at *7. The prosecutor was permitted to offer extrinsic evidence concerning Mrs. Estelle's prior statement pursuant to Rule 613(b).

Finally, to the extent that petitioner contends he was denied his right to due process because the prosecution did not disclose this evidence during discovery, the claim is without merit. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution

13

of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. However, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *accord Gray v. Netherland*, 518 U.S. 152, 168 (1996). Because Mrs. Estelle's statement to Grandison was not exculpatory, the prosecutor's failure to disclose the statement did not violate *Brady*, and any violation of the state law discovery rules raises an issue not cognizable on habeas review. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004) (Gadola, J.); *Meade v. Lavigne*, 265 F. Supp. 2d 849, 867 (E.D. Mich. 2003) (Tarnow, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Opinion Testimony (Claim VII)

Petitioner next contends that he was denied a fair trial when two witnesses offered opinion testimony that they were not qualified to give. First, during direct examination, the prosecutor asked Trooper Herbert Fluker about the items seized from the home of petitioner's mother. Unsolicited, Fluker offered that a Pyrex cooking pan had cocaine residue inside it. *See* Trial Tr., dated 5/12/99, at 94. Defense counsel objected, and a sidebar conference was held. Although the court did not make a ruling on the record and did not instruct the jury to disregard the evidence, the court apparently sustained the objection, as the prosecutor's next question began, "Trooper, I didn't ask what was inside, if you can please answer the questions that I ask." *Id.* Second, Sergeant Garth Burnside testified that, although there may possibly be an innocent explanation for possessing all of the items recovered from the home of petitioner's mother, based on his experience he could not envision one other than that the basement was being used to manufacture crack cocaine. *See id.* at

14

144. Counsel objected, and the court gave an instruction to the jury to disregard the evidence. *See id.* The Court should conclude that petitioner is not entitled to habeas relief on these claims.

With respect to Trooper Fluker's testimony, petitioner cannot show that this testimony denied him a fair trial. The comment was a brief, isolated, and unsolicited comment. Further, there was substantial evidence of petitioner's guilt, including his admitted possession of the cocaine in an amount inconsistent with personal use, his attempt to dispose of the bag containing the cocaine, and the drug paraphernalia found in his mother's home. In these circumstances, petitioner cannot show that Fluker's testimony denied him a fair trial. *See Thornberg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005); *Lam v. Kelchner*, 304 F.3d 256, 272 (3d Cir. 2002).

With respect to Sergeant Burnside's testimony, petitioner cannot show that he was denied a fair trial because the trial court immediately instructed the jury to disregard the testimony. It is the "almost invariably assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also, Green v. Miller*, 483 U.S. 756, 766 n.8 (1987).

F.    *Prosecutorial Misconduct Claims (Claim III)*

Petitioner next contends that he was denied a fair trial by several instances of prosecutorial misconduct. The Court should conclude that petitioner is not entitled to habeas relief on these claims.[3]

---

[3]Respondent contends that at least some of these prosecutorial misconduct claims are barred by petitioner's procedural default in the state courts. Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. Petitioner contends that his trial counsel was ineffective for failing to object to the prosecutor's comments at trial. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that counsel was ineffective petitioner must show that counsel's performance was deficient and that he was prejudiced by counsel's failure to object. This determination, in turn, requires an examination of the merits of his

15

1.    *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2.    *Analysis*

a. *Labeling Petitioner a Drug Dealer*

Petitioner first contends that the prosecutor committed misconduct by labeling him a drug dealer during his questioning of various witnesses. Petitioner contends that these comments were

---

prosecutorial misconduct claims. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

prejudicial because they suggested that he was someone who engaged in narcotics transactions on a regular basis. However, petitioner was charged with possessing with intent to distribute the cocaine found in his possession, and petitioner's defense was that he was merely delivering a package for a friend and did not know that drugs were inside the package. Thus, petitioner's intent was at issue in the trial, and circumstantial evidence that the drugs were intended for distribution rather than personal use was, as discussed above, relevant and admissible at petitioner's trial. *Cf. United States v. Butler*, 102 F.3d 1191, 1199 (11th Cir. 1997); *United States v. Brown*, 16 F.3d 423, 431 (D.C. Cir. 1994); *United States v. Savinovich*, 845 F.2d 834, 838 (9th Cir. 1988). And, once the evidence was properly admitted, the prosecutor was permitted to comment on, and draw reasonable inferences from, this evidence. *See United States v. Emuegbunam*, 268 F.3d 377, 405-06 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000); *Anderson v. United States*, 246 F. Supp. 2d 758, 761 (E.D. Mich. 2003) (Gadola, J.). Thus, the prosecutor's comments and questions did not amount to prosecutorial misconduct, and the Court should conclude that petitioner is not entitled to habeas relief on this claim

### b. *Commenting on Petitioner's Motion to Suppress*

Petitioner next contends that he was denied a fair trial when the prosecutor commented on the court's resolution of petitioner's motion to suppress the evidence. During the prosecutor's cross-examination of petitioner, the following exchange took place:

> Q:      Did you tell [your brother] that there was some evidence that come [sic] out your mothers [sic] house on Steele, that was going to be offered by the prosecution, did you talk to him about anything like that?
> MR. ROYAL:      I'll object, how could he have possibly known what the prosecution was going to offer in this trial?
> MR. SIMON:      He knew because defense moved to suppress unsuccessfully back in September.
> MR. ROYAL:      That didn't notify us of anything regarding what Mr. Simon

17

was going to introduce in this trial.

THE COURT:           Over ruled [sic].

Trial Tr., dated 5/13/99, at 115. Petitioner cannot show that this comment deprived him of a fair

trial. The comment was isolated, made in response to defense counsel's objection, and was made

in the context of an argument over a legal matter. In these circumstances, petitioner cannot show

that the prosecutor's brief comment denied him a fair trial. *See United States ex rel. Fleming v.*

*DeTella*, No. 97 C 2997, 2001 WL 127644, at *7 & n.1 (N.D. Ill. Feb. 14, 2001). Accordingly, the

Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Sarcastic Responses During Cross-Examination

Petitioner next contends that he was denied a fair trial by the prosecutor's sarcastic response

to his answers on cross-examination. During cross-examination, petitioner testified that the drugs

were given to him by a man named Kevin Garland. The prosecutor asked where Garland lived, and

petitioner indicated that he was deceased. The prosecutor then said, "[h]ow convenient," and asked

"[s]o now we have to have a seance to ask him whether he is the real dope dealer?" Trial Tr., dated

5/13/99, at 138. Defense counsel objected to this question, and the prosecutor withdrew it. *See id.*

Even if this comment was improper, however, petitioner cannot show that it was so prejudicial that

it denied him a fair trial. The comment did not misstate any evidence, and drew a fair inference from

petitioner's testimony. In context, the prosecutor's sarcastic comment did not deprive petitioner of

a fair trial. *See Davis v. Burt*, 100 Fed. Appx. 340, 348 (6th Cir. 2004); *Hernandez v. Bartlett*, 796

F. Supp. 77, 80 (E.D.N.Y. 1992). Accordingly, the Court should conclude that petitioner is not

entitled to habeas relief on this claim.

### d. Asking Petitioner to Comment on Credibility of a Witness

Petitioner next contends that he was denied a fair trial when the prosecutor asked him to

18

comment on the credibility of other witnesses. However, the prosecutor never asked petitioner to comment on the general credibility of the prosecution's witnesses. Rather, at various points in the cross-examination the prosecutor asked petitioner whether he disputed particular facts as testified to by the witnesses. *See* Trial Tr., dated 5/13/99, at 122-23, 123-24, 131-32. It is true that a number of courts, both state and federal, have held that it is improper for a prosecutor to ask a witness to testify about the veracity of another witness. *See United States v. Sanchez*, 176 F.3d 1214, 1219-20 (9th Cir. 1999) (citing cases); *United States v. Sullivan*, 85 F.3d 743, 749-50 (1st Cir. 1996); *United States v. Montalvo*, 20 F. Supp. 2d 270, 277-78 (D.P.R. 1998) (citing cases). All of these cases–again, both state and federal–however, were direct appeal cases in which the courts exercise supervisory powers over both the trial courts and prosecutors. A federal habeas court has no such supervisory powers over state courts or state prosecutors. *See Murphy v. Florida*, 421 U.S. 794, 797 (1975). Petitioner has cited, and I have found, no cases either applying this rule in a habeas corpus case or holding that questions of this type amount to a denial of due process, as is required for habeas relief. Thus, it is at a minimum questionable whether the rule upon which petitioner relies applies here. *See Zemina v. Solem*, 438 F. Supp. 455, 465 (D.S.D. 1977) (rejecting petitioner's claim based upon prosecutorial misconduct, noting that "[i]f . . . this were a matter of a direct appeal from a conviction in federal court, there might be reversible error. The test in a habeas corpus proceeding, however, is more demanding[.]"), *aff'd*, 573 F.2d 1027 (8th Cir. 1978); *cf. Brecht v. Abrahamson*, 507 U.S. 619, 633, 634 (1993) (noting that "[t]he principle that collateral review is different from direct review resounds throughout our habeas jurisprudence," and that "[r]ecognizing the distinction between direct and collateral review, we have applied different standards on habeas than would be applied on direct review with respect to [various] matters[.]").

19

Even assuming the rule does apply here, however, the prosecutor's questions were not improper. The courts that have found reversible error have all been faced with questions of the "was the other witness *lying*" type. Here, petitioner was not asked whether any of the other witnesses were lying, nor did the question require petitioner to comment on the credibility of any of the witnesses. Rather, petitioner was merely asked whether he denied certain discrete facts that were testified to by the witnesses. This questioning was not improper. *See People v. Ackerman*, 257 Mich. App. 434, 449, 669 N.W.2d 818, 827 (2003) ("We find no merit in defendant's claim that the prosecutor engaged in misconduct by asking defendant whether he disputed specific points of other witnesses' testimony. . . . [T]he prosecutor did not ask defendant to comment on the witnesses' credibility; she only asked whether the defendant had a different version of the facts. It is not improper for the prosecutor to attempt to ascertain which facts are in dispute."); *cf. United States v. Gaines*, 170 F.3d 72, 81-82 (1st Cir. 1999); *Joseph v. State*, 868 So. 2d 5, 7-8 (Fla. Ct. App. 2004). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Attacking Defense Counsel's Argument

Petitioner next contends that the prosecutor committed misconduct by attacking defense counsel's closing argument:

> Mr. Royal said that -- There's a number of things he said. And I counted up. He spent 31 minutes by my count in giving you his closing argument. He spent four, four of those 31 minutes talking about his client's ridiculous explanation for how he had this dope. He spent about 27 minutes telling you about presumption of innocence, reasonable doubt, the burden of proof, which as I said are important things.
> But he wants you to think about anything but what his client's ridiculous explanation for having this dope was. He wants you to think about anything but that. That's why he spends four minutes out of 31 addressing it.

Trial Tr., dated 5/14/99, at 56. Petitioner contends that this argument improperly denigrated the

20

defense, particularly in light of the fact that it was the court that had limited closing arguments to 30 minutes per side. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Contrary to petitioner's argument, the prosecutor did not suggest that defense counsel did not believe in his client's case based on the amount of time counsel argued. Rather, the prosecutor merely noted that counsel had spent little time discussing petitioner's factual account as a percentage of the total argument. The prosecutor's argument, taken as a whole, did imply that defendant's version of events was untrue, but that was an implication based on the evidence, *i.e.*, the testimony of the witnesses and the inherent implausibility of petitioner's version of events. The prosecutor merely highlighted that defense counsel did not dwell on petitioner's version of events because that version was a weakness in the defense case. Such an argument, based on the evidence offered at trial, was not improper. *See Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (same). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Time Limit on Closing Argument (Claim IV)*

Petitioner next argues that he was denied a fair trial when the trial court limited each side to 30 minutes for closing argument. The Michigan Court of Appeals rejected this claim, reasoning:

> Although defendant asserts that his trial counsel did not have adequate time to cover every point within the time limit imposed, the record reveals that the case was not unusually complex. Defendant did not deny that drugs were found in a satchel that he had thrown from his vehicle. Rather, defendant asserted that the drugs belonged to a now deceased acquaintance who asked him to do a favor. On appeal, defendant has failed to identify any points that he was unable to cover as a result of the time limitations. In fact, defense counsel persuaded the jury to acquit defendant of a charge that involved heroin found in the police vehicle. Under the

21

circumstances, we cannot conclude that the trial court abused its discretion by imposing the time limitations.

Ct. App. op., at 3. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner has cited, and I have found, no clearly established federal law, as determined by the Supreme Court, which compels a conclusion different from that reached by the court of appeals in petitioner's case. In *Herring v. New York*, 422 U.S. 853 (1975), the Court held that a defendant's due process rights are violated when there is a total denial of the right to make a closing summation. *See id.* at 861-65. In so holding, however, the Court explicitly noted that a trial judge "must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant." *Id.* at 862. There exists no other Supreme Court precedent which suggests that the trial court's 30 minute time limit was either contrary to, or an unreasonable application of, clearly established federal law.

Further, even under the standards applied by the federal courts of appeals on direct appeal of federal criminal cases, petitioner cannot show that the trial court abused its discretion in limiting closing argument to 30 minutes. Petitioner's case was not complex. The relevant facts were, for the most part, undisputed, and the only question was whether the jury believed petitioner's account that he had been given the package by a friend and did not know that the package contained cocaine. In light of the straightforward nature of the case, 30 minutes was sufficient for each side to present its case to the jury. *See United States v. Anderson*, ___ F.3d ___, ___, 2006 WL 775152, at *33 (10th Cir. Mar. 28, 2006); *United States v. Gray*, 105 F.3d 956, 963 (5th Cir. 1997). Further, petitioner has not set forth any additional argument which counsel would have made had more time been

22

afforded, nor has he identified any aspects of his defense which counsel was not adequately able to cover in the time allotted. *See Anderson*, ___ F.3d at ___, 2006 WL 775152, at *33; *United States v. Sokelo*, 97 F.3d 782, 793-94 (5th Cir. 1996). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

## H. *Sentencing Claims (Claims VIII and IX)*

Petitioner next raises two challenges to the sentence imposed by the trial court. The Court should conclude that petitioner is not entitled to habeas relief on these claims.[4]

### 1. *Retroactive Change in Sentencing Laws (Claim VIII)*

Petitioner first argues that he was entitled to a resentencing based on changes in Michigan sentencing laws. At the time of petitioner's conviction and sentence, the Michigan drug laws provided that a person guilty of possessing with intent to distribute a controlled substance (or a mixture of a controlled substance) in the amount of 650 grams or more may be sentenced to life

---

[4]Respondent contends that these claims are barred by petitioner's procedural default in the state courts. These claims were first raised in petitioner's motion for relief from judgment. The state appellate courts denied petitioner's applications for leave to appeal based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." However, the Sixth Circuit has given inconsistent signals as to whether, and to what extent, this form language constitutes a proper invocation of the procedural bar found in Rule 6.508(D)(3). *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) *and Williams v. Jones*, 231 F. Supp. 2d 586, 597 (E.D. Mich. 2002) (Lawson, J.). While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also, Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Because petitioner's sentencing claims are without merit, the Court should reject the claims on that basis.

imprisonment or any term of years, but not less then 20 years. *See* MICH. COMP. LAWS ANN. §
333.7401(2)(a)(i), Historical and Statutory Notes, 2002 Legislation (West 2001 & Supp. 2005). As
amended by 2002 Mich. Pub. Act 665, the statute now provides for imprisonment of life or any term
of years for one convicted of possessing with intent to distribute over 1,000 grams of a controlled
substance; for those convicted of possessing more than 450 grams but less than 1,000 grams, the
statute provides for imprisonment of no more than 30 years. *See* MICH. COMP. LAWS §
333.7401(2)(a)(i)-(ii). Petitioner contends that he is entitled to retroactive benefit of this provision.
The Court should conclude that petitioner is not entitled to habeas relief on this claim.

The public act which altered the Michigan drug laws explicitly provides an effective date of
March 1, 2003. *See* MICH. COMP. LAWS ANN. § 333.7401(2)(a)(i), Historical and Statutory Notes,
2002 Legislation (West 2001 & Supp. 2005). The Michigan courts have determined that these
amendments do not apply retroactively to cases concluded prior to the effective date of the
amendments. *See People v. Thomas*, 260 Mich. App. 450, 459, 678 N.W.2d 631, 637-38 (2004).
This conclusion is a matter of state law which is not cognizable on habeas review. *See Dickson v.
Franklin*, 130 Fed. Appx. 259, 263-64 (10th Cir. 2005). Accordingly, the Court should conclude that
petitioner is not entitled to habeas relief on this claim.

2.   *Proportionality (Claim IX)*

Petitioner also contends that his sentence is disproportionate to his offense. The Court should
conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment
requires that "a criminal sentence must be proportionate to the crime for which the defendant has

24

been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id.* at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991). In *Harmelin*, the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are "grossly" disproportionate to the crime. *See id.* at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of

25

gross disproportionality." *Id.* at 1005.[5]   Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized,

although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality.

*United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).   At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence").   Thus, as a general matter,

one could argue without fear of contradiction by any decision of [the Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative.

*Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id.* at 997-1001 (Kennedy, J.).

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*.   In *Ewing v. California*, 538

---

[5]Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three-factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor, J.). Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id.* at 31-32 (opinion of Scalia, J.); *id.* at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id.* at 33-35 (opinion of Stevens, J.); *id.* at 35-37 (opinion of Breyer, J.).

Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

### b. Analysis

Here, the "threshold comparison" of petitioner's crime and the sentence imposed does not

27

"lead[] to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus petitioner is not entitled to habeas relief on this ground.[6]  In *Harmelin*, the Court upheld the mandatory term of nonparolable life imprisonment imposed by MICH. COMP. LAWS § 333.7403(2)(a)(I) prior to its 1998 amendment.  Specifically, a majority of the Court found that the sentence did not violate the principle of proportionality, if any, imposed by the Eighth Amendment.  *See Harmelin*, 501 U.S. at 990 (Scalia, J., joined by Rehnquist, C.J.) (concluding that Eighth Amendment contains no proportionality requirement outside the capital punishment context); *id.* at 1005 (Kennedy, J., joined by O'Connor and Souter, JJ.) (concluding that Michigan's sentencing scheme does not violate the narrow proportionality required by the Eighth Amendment).  It follows that petitioner's lesser sentence of 25-40 years' imprisonment for the same offense as involved in *Harmelin* is therefore constitutional.  *See also, Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam) (40 year prison term and $20,000 fine imposed for possession and distribution of nine ounces of marijuana not unconstitutional); *United States v. Valdez*, 16 F.3d 1324, 1334 (2d Cir. 1995) (upholding life without parole for "merely middle-level drug dealers").  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.     *Resolution of Petitioner's Postconviction Motion (Claim X)*

Finally, petitioner claims that the trial court erred in denying his motion for relief from judgment because he satisfied MICH. CT. R. 6.508(D)(3).  To the extent that petitioner raises this claim to overcome his various procedural defaults, the Court need not address the claim because, as

---

[6]To the extent that petitioner's claim rests on the Michigan proportionality rule established in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), the claim is one of state law which is not cognizable on habeas review.  *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.).

discussed in footnotes 3 and 4 of this Report, the claims should be denied on the merits rather than on the basis of any procedural default. To the extent that petitioner raises this claim as an independent basis for habeas relief, the claim is without merit. It is well established that nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue[.]" *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Thus, the state courts' alleged error in his postconviction proceeding does not provide a basis for habeas relief.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis*

*v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

*Paul J. Komives*

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: *April 6, 2006*